68 F.3d 475
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Velda S. REED, Plaintiff-Appellant,
v.
Janet S. RENO, Attorney General of the United States;
Charles Stewart, Administrator, Federal Medical
Center--Lexington, Federal Bureau of
Prisons, Defendants-Appellees.
 No. 94-5727.
 United States Court of Appeals, Sixth Circuit.
 Oct. 11, 1995.
 
 Before: NELSON and RYAN, Circuit Judges; and ECHOLS, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 The plaintiff, Velda Reed, brought an action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 633a, alleging that the Bureau of Prisons (BOP), a component of the Department of Justice (DOJ), refused to consider her application for employment because of her age. Reed appeals the district court's grant of summary judgment on all issues in favor of the defendants, Janet Reno, Attorney General of the United States, and Charles Stewart, Administrator, Federal Medical Center (FMC) at Lexington, Kentucky. The defendants contended that the DOJ was authorized by 5 U.S.C. Sec. 3307(e) to set a maximum entry age limit for "law enforcement" officers, and that all employees working within federal prisons hold "law enforcement" positions. As we explain below, just a week before oral argument, the government filed purportedly newly discovered documents. These documents compel us to refrain from addressing the merits of the judgment below. Instead, we grant the government's pending motion to supplement the record on appeal, vacate the entry of summary judgment for the defendants, and remand for further proceedings.
 
 I.
 
 2
 In early June 1993, Velda Reed applied for an "Accounting Technician" position at FMC-Lexington. The parties do not describe what role FMC-Lexington in particular, or Federal Medical Centers in general, play in the federal prison system, but an advertisement attached to the plaintiff's verified complaint states, "The Federal Medical Center-Lexington, Ky serves a medical/surgical and psychiatric referral center for the Federal Bureau of Prisons." On June 9, 1993, FMC-Lexington returned Reed's application and sent her a letter explaining that "the maximum entry age for a position in the Bureau of Prisons is 36." Reed was forty years old at the time.
 
 
 3
 On August 2, 1993, Reed filed a notice of intent to sue with the Equal Employment Opportunity Commission (EEOC). Thirty days later, on September 1, 1993, Reed filed suit in federal district court as authorized by Sec. 633a(c). The defendants answered that the DOJ was authorized to set a maximum entry age for "law enforcement officers," and that the DOJ designated all Bureau of Prisons employees working within a correctional institution as law enforcement officers.[1] The plaintiff deposed BOP officials in order to clarify the duties of an accounting technician and the DOJ designation of law enforcement officers. We focus here on the plaintiff's attempts to discover what it is that led the DOJ to designate all in-prison jobs as "law enforcement" positions--or whether the DOJ had indeed even made that designation.
 
 
 4
 First, the plaintiff deposed Carl Swick, the BOP Human Resources Administrator for the Mid-Atlantic Region, which includes Kentucky. Swick explained that he supervises the human resources personnel at each institution in the Mid-Atlantic Region. Swick testified that in order to be eligible for an original appointment to a law enforcement officer position, an applicant must not have reached his or her thirty-seventh birthday. To Swick's knowledge, the BOP had not conducted any studies to determine whether specific positions were law enforcement officer positions; rather, the BOP deemed all "employees who work in institutions operated by the Federal Bureau of Prisons" as law enforcement officers.
 
 
 5
 In addition to deposing Swick, the plaintiff also made interrogatory and document production requests. Reed asked in an interrogatory whether the BOP or FMC-Lexington "ha[d] performed any studies or inquiry into which jobs ... consist of duties which are sufficiently rigorous that employment opportunities should be limited to young and physically vigorous individuals." The defendants answered, "The Federal Medical Center, Lexington, has not conducted any studies. Defendants do not know at this time whether any studies were conducted by the Bureau of Prisons; however, if defendants become aware of any studies, they will provide the information immediately to plaintiff." Reed also asked "whether the Department of Justice ... has issued any determinations as contemplated at 5 U.S.C. Section 8401(17)(D) as to which jobs within such agencies should be limited to young and physically vigorous individuals, and if so, identify all documents relating to or reflecting such determinations." Although the defendants replied that "[i]t is unknown at this time whether the Department of Justice ... or the Federal Bureau of Prisons have any documents that specify certain jobs should be limited to young and physically vigorous individuals," the defendants somehow knew that "[a]ll jobs within the Bureau of Prisons are law enforcement positions." The defendants also assured that "[i]f defendants discover any documents, they will provide them to plaintiff."
 
 
 6
 Finally, the plaintiff also requested "[a]ll directives, letters, opinions, and similar documents which the [FMC] and the [BOP] relied on in formulating its policy not to [hire] persons over the age of forty for positions in Lexington, ... including specifically all documents relating to or reflecting policies on which employees are or are not 'law enforcement officers' as defined by statute." The defendants simply responded, "Defendants relied on the law enforcement statute created by Congress. See 5 U.S.C. Sec. 8401(17)(D) and legislative history."
 
 
 7
 After discovery, the plaintiff moved for summary judgment as to liability, and the defendants moved for summary judgment on all issues. The district court granted summary judgment for the defendants and dismissed the case. The district court reasoned that 5 U.S.C. Sec. 3307(e) authorized the head of the BOP to set a maximum entry age for law enforcement officers, and that 5 U.S.C. Sec. 8401(17)(D) defined "law enforcement" officer as a BOP employee whose duties involve "frequent direct contact" with inmates and "are sufficiently rigorous that employment opportunities should be limited to young and physically vigorous individuals, as determined by the head of the employing agency." Sec. 8401(17)(D). According to the district court, the BOP classified all jobs in prisons as law enforcement positions. The district court noted that, in addition to bookkeeping duties, accounting technicians perform several security duties, such as pat down searches. Accordingly, the BOP "had a sufficient basis" to classify the accounting technician position as a "law enforcement" position, and such a classification was not "unreasonable or arbitrary." Finally, the district court rejected the plaintiff's equal protection claim.[2]
 
 II.
 
 8
 An understanding of the background in the evolution of the relevant statutory law is required to understand our disposition of this appeal. In 1974, Congress added subsection (d) to 5 U.S.C. Sec. 3307, permitting maximum entry age requirements for law enforcement positions. At that time, Sec. 3307(d) provided:
 
 
 9
 (d) The head of any agency may, with the concurrence of such agent as the President may designate, determine and fix the minimum and maximum limits of age within which an original appointment may be made to a position as a law enforcement officer or firefighter, as defined by section 8331(20) and (21), respectively, of this title.
 
 
 10
 In 1974, the president designated the Civil Service Commission as the concurring agent, Exec.Order 11,817, 39 Fed.Reg. 39,247 (1974); in 1978, the president designated the newly created Office of Personnel Management (OPM) as the agent, Exec.Order 12,017, 45 Fed.Reg. 1055 (1978). Section 8331, to which Sec. 3307(d) refers for the definition of "law enforcement officer," serves as the definition section for the subchapter regarding the Civil Service Retirement System (CSRS). Section 8331(20) provides that " 'law enforcement officer' means an employee, the duties of whose position are primarily the investigation, apprehension, or detention" of federal criminals. The definition continues:
 
 
 11
 For the purpose of this paragraph [Sec. 8331(20) ], "detention" includes the duties of--
 
 
 12
 (A) employees of the Bureau of Prisons ...;
 
 
 13
 whose duties in connection with individuals in detention ... require frequent (as determined by the appropriate administrative authority with the concurrence of the Office) direct contact with these individuals in their detention, direction, supervision, inspection, training, employment, care, transportation, or rehabilitation....
 
 
 14
 (Emphases added.)
 
 
 15
 In Stewart v. Smith, 673 F.2d 485 (D.C.Cir.1982), applicants for positions in BOP correctional facilities challenged the DOJ's determination that all BOP employees working in correctional facilities be deemed law enforcement officers under Sec. 8331(20)(A). The court described the emergence of the DOJ's broad definitional stance. In 1975, the DOJ proposed the comprehensive definition to the Civil Service Commission. The DOJ reasoned that almost all BOP employees working in correctional facilities had received "hazardous duty" pension increases under prior law; thus, the DOJ wanted to simply designate all such employees as law enforcement officers. The DOJ did offer, however, to provide detailed position-by-position information if the Commission wished. The Commission agreed that no additional information was necessary, and concurred in the DOJ's determination in March 1975. Id. at 488-89 & n. 12.
 
 
 16
 In addition to determining the scope of the law enforcement officer definition, the DOJ sought the Commission's approval for setting the maximum entry age for such officers at thirty-four. The Commission concurred in that maximum entry age in June 1975. Id. at 489. The DOJ formally adopted thirty-four as the maximum entry age for law enforcement officers in DOJ Order 1338.1A, issued October 4, 1976.
 
 
 17
 The district court in Stewart ordered the OPM, which had replaced the Commission as the designated concurring agent, to review each BOP job classification for positions in correctional facilities. BOP sent OPM: (1) 3000 job descriptions that on their face met the frequent direct contact requirement; and (2) additional information on 766 positions that had job descriptions that did not facially meet the frequent direct contact requirement. 673 F.2d at 494-95 & n. 33. OPM determined that it lacked sufficient information on twenty-four positions in the latter category; BOP sent still more information, and the OPM then concluded that, as originally determined, all BOP positions in correctional facilities met the frequent direct contact requirement. Finally, OPM visited two BOP prisons and determined that all employees working in the prisons directly encountered inmates with sufficient frequency. Id. at 495. Based on this record, the court of appeals held that "these findings provide a rational basis for BOP's determination that all employees in correctional facilities fall with the statutory definition of a law enforcement officer." Id.
 
 
 18
 In 1986, Congress created a new retirement scheme for federal employees, embodied in the Federal Employees' Retirement System (FERS) Act of 1986, 5 U.S.C.A. Secs. 8401-79 (West Supp.1995). For those employees covered by FERS,[3] a new definition of law enforcement officer applies:
 
 
 19
 (17) the term "law enforcement officer" means--
 
 
 20
 (D) an employee--
 
 
 21
 (i) of the Bureau of Prisons ...;
 
 
 22
 whose duties in connection with individuals in detention ... require frequent direct contact with these individuals in their detention and are sufficiently rigorous that employment opportunities should be limited to young and physically vigorous individuals, as determined by the head of the employing agency....
 
 
 23
 Sec. 8401(17)(D)(i) (emphases added). The Senate Committee on Governmental Affairs issued a report on the first version of its bill, explaining:
 
 
 24
 Paragraph (18) defines "law enforcement officer" to mean an employee with rigorous law enforcement duties that require young and vigorous individuals, as determined by the OPM after considering the recommendation of the employing agency.... This is a more restrictive definition than under present law.... The committee expects far fewer positions to be defined as law enforcement positions than under current law. Frequent contact with criminals is an insufficient reason for a position to be defined as a law enforcement position.
 
 
 25
 S.Rep. No. 166, 99th Cong., 2d Sess. 41, reprinted in 1986 U.S.C.C.A.N. 1405, 1446. Similarly, the House Conference Report accompanying the enacted version of the bill asserted, "Definitions of firefighters and law enforcement officers are more restrictive than under CSRS." H.R.Conf.Rep. No. 606, 99th Cong., 2d Sess. 132, reprinted in 1986 U.S.C.C.A.N. 1508, 1515. Although the early versions of Sec. 8401(17)(D) required concurrence by the OPM, the final version dropped that requirement.
 
 
 26
 Unsurprisingly, the retirement system overhaul overlooked some details. It was not until 1987 that Congress added a FERS counterpart to the authorization in Sec. 3307(d) to set maximum entry age requirements for CSRS-covered law enforcement positions. Section 3307(e) provides:
 
 
 27
 The head of an agency may determine and fix the maximum age limit for an original appointment to a position as a firefighter or law enforcement officer, as defined by section 8401(14) or (17), respectively, of this title.
 
 
 28
 The House Committee on Post Office and Civil Service issued a report with the bill, explaining:
 
 
 29
 [Section 3307] permits an agency head, with the concurrence of the President's designated agent, to fix minimum and maximum age limits for appointments of law enforcement officers ... covered by CSRS (section 3307(d)). Inadvertently, no similar authority to fix age limits is provided with respect to law enforcement officers ... under FERS.... [T]he committee amendment adds a new section 3307(e) which authorizes agency heads to fix such age limits. It also deletes the requirement that the President designate an agency to concur in the fixing of age limits. As a practical matter, the agency head makes the determination. The required concurrence is an unnecessary additional administrative action.
 
 
 30
 H.R.Rep. No. 374, 100th Cong., 1st Sess. 21, reprinted in 1987 U.S.C.C.A.N. 3217, 3220. Section 3307(d) was similarly amended to forego concurrence by a designated agent.
 
 
 31
 Until just before oral argument, the record on appeal failed to include any document that actually designates all BOP employees working in correctional facilities and covered by FERS to be law enforcement officers under Sec. 8401(17)(D). The record did contain DOJ Order 1338.1B, issued on July 16, 1992 by then-Assistant Attorney General for Administration, Harry H. Flickinger. Then-Attorney General Dick Thornburgh had authorized Flickinger in June 1991 to issue the order. The order cancels DOJ Order 1338.1A. Referring to Secs. 3307(d) and (e), DOJ Order 1338.1B sets thirty-six as the maximum entry age for law enforcement officers. However, the order does not designate which positions are law enforcement positions. Indeed, unlike DOJ Order 1338.1A, DOJ Order 1338.1B does not even expressly instruct the heads of the various DOJ components to make such designations. The order only directs that, "The heads of Department components are responsible for ... the proper administration of the provisions of this order within their respective components." Thus, despite the parties' discussion of the DOJ's "determination" that all in-prison BOP employees are law enforcement officers under Sec. 8401(17)(D), the record failed to reveal any actual determination by the "head of the employing agency," Sec. 8401(17)(D), presumably the Attorney General, or any actual determination by the Director of the BOP as the Attorney General's delegatee.
 
 
 32
 One week before oral argument, however, the government found three additional documents and moved to supplement the record on appeal. According to the defendants' counsel, BOP officials only recently recognized the relevance of the documents. The documents were introduced by an affidavit from a BOP personnel official, Darlene N. Alexander, Chief of Benefits, Awards and Professional Development. The first document is a memorandum from the Assistant Attorney General for Administration, Harry H. Flickinger, to the Director of the BOP, J. Michael Quinlan, dated June 15, 1988. In the memorandum, Flickinger informs the BOP that the Attorney General approved as "law enforcement" positions all the in-prison positions that BOP submitted to the DOJ on July 10, 1987. Flickinger also reports that out-of-prison positions require further review.
 
 
 33
 The second document is a memorandum from Flickinger to Attorney General Meese dated November 23, 1987, and an approval of the memorandum by Meese, dated December 1, 1987. In the November 1987 memorandum, Flickinger informs Meese that the FERS definition is more restrictive than the CSRS definition. Flickinger recommends approval of the law enforcement positions that he has attached to the memorandum, presumably including the in-prison BOP positions. Meese signed and approved the listing.
 
 
 34
 The third document appears to be a memorandum from the BOP to the DOJ; however, the document is undated and unsigned. This, presumably, is the July 10, 1987 "memo" to which Flickinger refers in his June 1988 memo to the BOP Director. This July 1987 memo informs Flickinger that the BOP interprets the new definition to include "all Bureau of Prisons employees ... who work within the confines of a Federal Correctional Institution and who must undergo detention training." The memo states that the Director "has submitted a listing of 4,804 positions" that meets those criteria. The memo also says that "This voluminous listing of positions is available for your review, if you so desire; however, we believe its submission to you is not necessary since the blanket FERS coverage of these positions ... suffices in regard to the FERS coverage determination."
 
 
 35
 We grant the government's motion to supplement the record on appeal with these documents, and accordingly conclude that the most appropriate disposition of this appeal is to vacate summary judgment and remand for further proceedings. We think that the plaintiff should have an opportunity to move the district court for further discovery regarding these documents.[4] In addition, the district court should have the first opportunity to address the impact that these documents, and any additional discovery, might have on the district court's decision. Accordingly, we express no view on the merits of the statutory claim.
 
 
 36
 We are well-aware that the government's delinquency in producing these documents caused the plaintiff to expend time and resources in presenting this case in a manner different from the way it would have been presented had the documents been available. At the risk of providing unnecessary guidance, we offer a few suggestions for the proceedings on remand. First, the district court should entertain any appropriate motions for costs and attorney's fees. Furthermore, once the proceedings below illuminate the DOJ's determination that all in-prison jobs are law enforcement positions--if indeed the DOJ made that determination--and if the parties again make cross-motions for summary judgment, the district court should identify the nature of the agency action at issue and the quantum of deference due to the agency, Friedrich v. Secretary of Health & Human Servs., 894 F.2d 829, 834 (6th Cir.), cert. denied, 498 U.S. 817 (1990). Finally, in assessing the defenses argued by the government's counsel, the district court might keep in mind the "well-established rule that an agency's action may not be upheld on grounds other than those relied on by the agency." National R.R. Passenger Corp. v. Boston & Maine Corp., 112 S.Ct. 1394, 1403 (1992) (citing SEC v. Chenery Corp., 318 U.S. 80, 88 (1943)), a rule which precludes consideration of counsel's "post hoc rationalizations for agency action," see Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50 (1983).
 
 III.
 
 37
 We GRANT the government's motion to supplement the record, VACATE the district court's entry of summary judgment for the defendants on the statutory claim, and REMAND for further proceedings.
 
 
 
 *
 The Honorable Robert L. Echols, United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 The defendants also answered that the plaintiff improperly named Charles Stewart as a defendant because 29 C.F.R. Sec. 1614.201(a) provides for only the head of the allegedly discriminating agency, in this case the Attorney General, to be named in a Sec. 633a suit. Apparently, the district court never decided the issue
 
 
 [2]
 The plaintiff does not contest on appeal the summary judgment on the constitutional claim. Accordingly, our disposition of the statutory claim does not affect summary judgment on the constitutional claim
 
 
 [3]
 No one disputes that FERS would apply to the plaintiff here if she were hired, and the definition of employees covered by FERS supports this conclusion, Sec. 8401(11)
 
 
 [4]
 For example, the memorandum purportedly from the BOP to the DOJ is unsigned and undated